**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: UNASSIGNED**

---------------------------------------------------------------- X
: 
**EXPRESS FASTENERS, LTD.** :
:
    **Plaintiff,** :
:
    *v.* :   **Case No. 26-853**
:
**UNITED STATES** :
:
    **Defendants.** :
---------------------------------------------------------------- X

## COMPLAINT

Plaintiff Express Fasteners, Ltd., (hereinafter "plaintiff" or "Express") through its undersigned counsel, for its complaint alleges as follows:

## NATURE OF THE ACTION

1. This action is brought to contest the denial of plaintiff's protest which challenged the appraisement in liquidation, by United States Customs and Border Protection, of certain imported machine screws, bolts, nuts, and fasteners.

## JURISDICTION

2. This Court has exclusive jurisdiction of this action pursuant to 28 U.S.C. §1581(a).

3. All liquidated duties, taxes and fees were paid prior to the commencement of this action.

4. This action is timely filed having been initiated within 180 days from the date of denial of plaintiff's protest against the appraisement of its merchandise in liquidation.

## PARTIES

5.  Plaintiff is a company headquartered in Glendale Heights, Illinois, which imports screws and fasteners that have been unlawfully valued and assessed Customs duties at issue in this action, the legality of which assessment is hereby challenged.

6.  The United States is the Federal defendant. Its challenged actions were undertaken by United States Customs and Border Protection ("Customs"), a unit of the Department of Homeland Security.

## STATEMENT OF FACTS

7.  Plaintiff imported certain machine screws and fasteners into the United States under cover of Consumption entries 8GX-80217045 and 8GX-80204878.

8.  Presidential Proclamation 10896 of February 10, 2025, *Adjusting Imports of Steel Into the United States*, 90 Fed. Reg. 9817 (published February 18, 2025) ("the February 10th Presidential Proclamation") imposes "national security" tariffs on certain imported steel articles, pursuant to Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. §1862, which is the best evidence of its contents.

9.  Section (5) of Presidential Proclamation 10896 provides:

For purposes of implementing the requirements in this proclamation, importers of steel derivative articles shall provide to U.S. Customs and Border Patrol within the Department of Homeland Security (CBP) any information necessary to identify the steel content used in the manufacture of steel derivative articles imports, covered by this Proclamation. CBP shall implement the information requirements as soon as practicable.

10. Annex I to Presidential Proclamation 10896 further provides:

For any derivative steel article below [which identifies derivative steel articles classified in chapter 73 of the Harmonized Tariff Schedule of the United States (HTSUS)] or any derivative steel article set forth in a subsequent Federal Register notice that is not in Chapter 73 of the HTSUS, the additional *ad valorem* duty shall apply only to the steel content of the derivative article

11.     Presidential Proclamation 10947 of June 3, 2025, *Adjusting Imports of Aluminum and Steel Into the United States* 90 Fed. Reg. 24199 (published June 8, 2025) ("the June 3rd Presidential Proclamation") imposed "national security" tariffs on various imported steel articles and steel-containing "derivative articles."

12.     Paragraph 6 of Presidential Proclamation 10947, which is the best evidence of its contents provides:

> 6) Notwithstanding any prior proclamation or Executive Order, the non-aluminum, non-steel content of all aluminum and steel articles and derivative articles shall be subject to tariffs pursuant to Executive Order 14257 of April 2, 2025 (Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits), as amended, and any other applicable tariffs. **The additional ad valorem duties described in clause 1 and clause 7 of this proclamation shall apply only to the steel content of articles in Chapter 73 of the HTSUS and only to the aluminum content of articles in Chapter 76 of the HTSUS**. U.S. Customs and Border Protection (CBP) shall issue authoritative guidance mandating strict compliance with declaration requirements for steel and aluminum content in imported articles and outlining maximum penalties for noncompliance, including that importers who submit underreported declarations may be subject to severe consequences, including but not limited to significant monetary penalties, loss of import privileges, and criminal liability, consistent with United States law.

(Emphasis Added).

13.     Neither Customs, nor any other government agency has issued regulations concerning the method or basis for calculating the "steel content of articles in Chapter 73 of the HTSUS," or the value thereof.

14.     Customs has issued a Cargo Systems Messaging Service ("CSMS") Message CSMS 65236374, dated June 3, 2025 and posted on Customs website at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3e36d96 (last accessed on January 27, 2026) (hereinafter "the CSMS"). *See* Exhibit 3. The CSMS, which is the best evidence of its contents, is titled "*UPDATED GUIDANCE: Import Duties on Imports of Steel and Steel Derivative Products"* and provides in relevant part:

3

As of June 4, 2025, for all steel and steel derivative articles classified in Chapter 73 that are subject to Section 232 steel duties under any Chapter 99 HTSUS heading, the applicable Section 232 duty is assessed only on the value of the steel content.

15. The CSMS provides reporting instructions for all steel and steel derivative articles in Chapter 73 and does not indicate that any steel items are excluded from this reporting instruction.

16. The CSMS clearly indicates that if the steel content is less than the value of the entire steel article, the value of the item may be broken out into two tariff lines: one for steel content and one for non-steel content. Thus, according to the CSMS, the 50% 232 duty applies to only the steel content of the article. The non-steel content of the derivative article would be subject to duty at the "reciprocal" tariff rate made applicable to the country of origin under the relevant IEEPA Executive Order. See Executive Order 14257 of April 2, 2025, as amended by Executive Order 14326 of July 31, 2025, as further amended by Executive Order 14346 of September 5, 2025; and by various bilateral trade agreements into which the United States has entered.

17. In addition, Customs has posed on its website a "Frequently Asked Questions" (FAQ) feature regarding "Section 232 Duties on Steel and Aluminum. See https://www.cbp.gov/trade/programs-administration/entry-summary/232-tariffs-aluminum-and-steel-faqs (last updated July 31, 2025; last accessed January 27, 2026). *See* Exhibit 4. Under the tab "How to determine the value of aluminum or steel content for derivative products outside of Ch. 76 or 73?" Customs has posted its only guidance concerning how to determine the value of steel content for derivative products subject to the Section 232 tariffs. The FAQ page states:

> The value of the steel/aluminum content should be determined in accordance with the principles of the Customs Valuation Agreement, as implemented in 19 U.S.C. 1401a. Thus, the value of the steel/aluminum content is the total price paid or payable for that content, which is the total payment (direct or indirect, and exclusive of any costs, charges, or expenses incurred for transportation, insurance, and related

4

services incident to the international shipment of the merchandise from the country of exportation to the country of importation) made/to be made for the steel/aluminum content by the buyer to, or for the benefit of, the seller of the steel/aluminum content. Normally, this would be based on the invoice paid by the buyer of the steel/aluminum content to, or for the benefit of the seller of the steel/aluminum content.

18.   In making entry of the subject machine screws and fasteners, plaintiff followed Customs' published guidance and declared the value of the steel content for the machine screws and fasteners as the cost to the manufacturer of purchasing the steel used to make the merchandise, and paid the 50% Section 232 tariff on that value. For the non-steel value of the merchandise, such as the cost of machining and fabricating the steel into screws, factory overhead and the seller's profit, plaintiff deposited estimated Section 232 duties based on the "reciprocal tariff" rate for the country of origin Taiwan, as established by the President under the Executive Orders issued under the claimed authority of IEEPA, 50 U.S.C. §1 701 *et seq*.

19.   The value of the machine screw and fastener as a whole, for purposes of duties imposed under the Tariff Act of 1930, harbor maintenance taxes and merchandise processing fees, was determined on the basis of the imports' transaction value pursuant to 19 U.S.C. § 1401a(b).

20.   Customs, in liquidation, applied the 50% ad valorem Section 232 duty rate to the entire entered value of the screws and fasteners, not merely to the value of the steel purchased by the manufacturer to produce the merchandise.

21.   On information and belief, Customs based its action in liquidation on an unpublished memorandum which, on information and belief, was issued to selected importers on or after December 3, 2025 by Customs Center of Excellence and Expertise ("CEE") for Base Metals (hereinafter the "CEE Memo"). Express Fasteners was made aware of this memorandum by another importer after it filed its protest. A copy of the CEE Memo is appended hereto as Complaint Exhibit 1.

22. The CEE Memo provides in essence that derivative products which, in their condition as imported consist solely of steel or solely of aluminum, are to be assessed with 50% tariffs on their full value, with no exclusions or exceptions for costs of fabrication or other value-added processes, overhead or profit. The Memorandum also states that all factory overheads and costs should be attributed solely to the steel or aluminum content of the imported article.

23. With respect to "derivative articles", the CEE Memo States:

> If the articles are 100% steel or 100% aluminum, there is no non-steel/aluminum content to separate and Section 232 duty is assessed on the full entered value of the article. There is no backing out of any costs not allowed by the Customs Value laws. Manufacturing, labor, coating, etc. costs are not subtracted.

24. With respect to "derivative articles" which are not, in their condition as imported, composed 100% of steel or aluminum, the CEE Memo states:

> If the articles are not wholly of steel or aluminum (there are non-steel/aluminum parts/components), the Section 232 duty is assessed on the steel/aluminum content of the article.
>
> [Customs Headquarters] has said this would be based on "the invoice paid by the buyer of the steel/aluminum content to, or for the benefit of the seller of the steel/aluminum content". The current position is this represents what the importer paid for the steel/aluminum content of the finished article and is the entered value of the imported article minus the cost of the non-steel/aluminum part/component of the finished article. Non-steel/aluminum content does not refer to fabrication, machining, labor, costs, etc.
>
> If allowed to separate out steel/aluminum and non-steel/aluminum content value, separate out the cost to the importer of the non-steel/aluminum part/component. There is no backing out of any costs not allowed by the Customs Value laws. Costs for manufacturing, labor, coating, etc., are not subtracted

25. Neither the CEE Memo, nor its contents, have been published by Customs and Border Protection as a regulation, or in any other official format.

26. Customs CEE's lack authority to issue legal interpretations of Presidential Proclamations. Centers of Excellence and Expertise have been delegated only the authority granted

6

to Port Directors according to CBP Decision 16-26, *Regulatory Implementation of the Centers for Excellence and Expertise, Interim Final Rule*. 81 Fed. Reg. 92978, 92979 (December 20, 2016) *citing* Delegation Order number 14-004, September 11, 2014.

27. According to CBP Regulations, the authority to issue interpretive rulings on Presidential Proclamations resides with the Office of International Trade, Regulations and Ruling Directorate in CBP Headquarters.

28. Section 177.2(a) of the CBP Regulations, 19 C.F.R. § 177.2(a) provides:

A request for a ruling should be in the form of a letter. Requests for Valuation and Carrier rulings should be addressed to the Commissioner of Customs and Border Protection, Attention: Regulations and Rulings, Office of International Trade, Washington, DC 20229. The Division and Branch in the Regulations and Rulings, Office of International Trade, to which the request should be directed may also be indicated, if known. Requests for tariff classification rulings should be addressed to the Director, National Commodity Specialist Division, Regulations and Rulings, Office of International Trade, U.S. Customs and Border Protection, 201 Varick Street, Suite 501, New York, New York 10014

29. With respect to the scope of interpretations that may be made by Regulations and Rulings, 19 C.F.R. § 177.1(d)(5) provides:

The term "Customs and related laws," as generally used in this part, includes any provision of the Tariff Act of 1930, as amended (including the Harmonized Tariff Schedule of the United States), or the Customs Regulations, or any provision contained in other legislation (including the navigation laws), regulations, treaties, orders, proclamations, or other agreements administered by the Customs Service.

30. Rulings issued by Acting Director, National Commodity Specialist Division, Regulations and Rulings, and published on CBP's website in its Customs Rulings Online Search System ("CROSS") hold that section 232 duties apply only to the metal content of steel, aluminum or copper derivative articles subject to section 232 duties and 232 duties do not apply to the full value of the imported derivative articles declared by the importer. Customs specifically determined that the 232 duties apply to the steel content of articles of Chapter 73. *See NY351539 of August*

*19, 2025* (Hardware packs for rail systems classified in Chapter 73 - "On March 12, 2025, Presidential proclamation 10896 imposed additional tariffs on certain derivative iron or steel products. Additional duties for derivative iron or steel products of 50 percent are reflected in Chapter 99, headings 9903.81.89, 9903.81.90, and 9903.81.91. Products provided by heading 9903.81.91, as well as products of Chapter 73 provided by 9903.81.89 and 9903.81.90, will be subject to a duty of 50 percent upon the value of the steel content." ; *see also NY 350227 of July 15, 2025* (bolt and hex nut units classified in Chapter 73 - "Products provided by heading 9903.81.91, as well as products of Chapter 73 provided by 9903.81.89 and 9903.81.90, will be subject to a duty of 50 percent upon the value of the steel content.")

31. Neither the CEE Memo, nor its contents, have been published as an amendment to the CSMS Message nor the FAQ guidance, in accordance with the requirements of Section 625(c) of the Tariff Act of 1930, as amended 19 U.S.C. § 1625(c).

32. On November 6, 2025, Express received a Customs Form 29 Notice of Proposed Action from Import Specialist ("IS") Sara Blackmore from the Base Metal CEE out of the Chicago, Illinois Field Office of CBP, providing a valuation advance proposal and asking for information of plaintiff's steel cost calculations. Express on November 17, 2025 filed a response to the CF29, outlining its calculations per the CSMS.

33. On November 19, 2025, CBP Import Specialist Sara Blackmore indicated that she has decided to rate advance both entries and provided the following reasoning.

> Regarding content value, if you have an article that legitimately had non-steel/aluminum/copper content to separate, I believe the CBP position has shifted, but **no formal guidance has been posted**:
>
> Steel articles of chapter 72 are 100% steel. Section 232 duty is assessed on the full entered value of the article.

8

> For steel articles of chapter 73, aluminum articles of chapter 76, and articles classified elsewhere (not including chapter72):
>
> If the articles are 100% steel or 100% aluminum, there is no non-steel/aluminum content to separate and Section 232duty is assessed on the full entered value of the article.
>
> If the articles are not wholly of steel or aluminum (think in terms of parts/components), the Section 232 duty is assessed on the steel/aluminum content of the article.
>
> HQ has said this would be based on "the invoice paid by the buyer of the steel/aluminum content to, or for the benefit of the seller of the steel/aluminum content". The most recent position is **this is what the importer paid for the steel/aluminum content of the finished article and is the entered value of the imported article minus the cost of the non-steel part of the finished article. "Non-steel content" does not refer to costs of fabrication, machining, labor, etc.**
>
> If the value of the steel/aluminum content cannot be determined, then report the duty based on the total entered value, on only one entry summary line.
>
> If allowed to separate out steel/aluminum and non-steel/aluminum content value, many importers have asked what costs they can exclude. There is no HQ guidance provided for "backing out" costs to arrive at the steel/aluminum content value for articles that that are not wholly of steel or aluminum (so no backing out fabrication, labor, machining, conversion, etc., costs).
>
> As stated before, for articles that are wholly made of steel or aluminum, there is no backing out of any costs not allowed by the Customs Value laws (so no backing out fabrication, labor, machining, conversion, etc., costs).

*See* Complaint Exhibit 2 (Emphasis added). Most of this reasoning is similar if not identical to that found in the now-public CEE Memo dated December 3, 2025.

34.     Customs liquidated entry 8GX-80204878 on November 28, 2025 and 8GX-80217045on December 12, 2025 assessing 50% on the entire value of the screws and fasteners. Express timely protests these liquidations and asked for accelerated disposition of the protest. The protest was deemed denied on January 11, 2026.

## COUNT I

35. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations of Paragraphs 1 through 33 of this Complaint.

36. To the extent it imposes rules for the valuation of imported merchandise, the CEE Memo contains rules of general applicability and imposes obligations on members of the public.

37. The CEE Memo purports to establish rules for the valuation of imported merchandise, similar to the regulations published in Part 152 of the Code of Federal Regulations, 19 C.F.R. Part 102.

38. To the extent the CEE Memo purports to impose rules of general applicability which obligate members of the public, it is required to be published as a regulation, using the "notice and comment" rulemaking procedures set out in the Administrative Procedures Act, 5 U.S.C. § 553.

39. The United States has not published the contents of the CEE Memo as a proposed regulation, nor solicited public comment concerning it.

40. To the extent at the CEE Memo was required to be promulgated as a regulation pursuant to the Administrative Procedures Act, and has not been so promulgated, it is null and void and of no effect, and this court must set it aside pursuant to 5 U.S.C. § 706(2)(B), along with actions taken pursuant to the CEE Memo, including the appraisement of plaintiff's imported goods in liquidation.

## COUNT II

41. Plaintiff incorporates paragraphs 1-40 above by reference.

42. The CSMS Memorandum and Customs FAQ page provide guidance to the public regarding the application of the Customs laws, including the Tariff Act of 1930 and the Trade Expansion Act of 1962.

43. The CSMS Memorandum and Customs FAQ page constitute rulings, for purposes of Section 625 of the Tariff Act of 1930, as amended 19 U.S.C. § 1625.

44. Section 177.1(d)(1) of the Customs Regulations, 19 C.F.R. § 177.1(d)(1), which is the best evidence of its contents, provides that "A 'ruling' is a written statement issued by the Headquarters Office or the appropriate office of Customs as provided in this part that interprets and applies the provisions of the Customs and related laws to a specific set of facts.

45. Both the CSMS Memorandum and the Customs FAQ page have been published for more than 30 days.

46. To the extent the CEE Memo and guidance issued in the CEE's Rate Advance of Express Fastener entries, and/or the Customs Form 29 Notice of Proposed Action issued to plaintiff constitutes a modification or revocation of the CSMS Memorandum, the FAQ page, and Regulations and Rulings published rulings, it cannot be made effective until and unless CBP follows the "notice and comment" ruling modification and revocation procedures set out in Section 625(c) of the Tariff Act of 1930, as amended 19 U.S.C. §1625(c).

47. On information and belief, Customs has not attempted to modify or revoke the CSMS Memorandum, the Customs FAQ page, or and Regulations and Rulings published rulings, in accordance with the procedures set out at 19 U.S.C. § 1625(c), nor to issue the CEE Memo as a substitute ruling.

48. To the extent the CEE Memo and its guidance in its CF29s revoke or modify either the CSMS Memorandum, the Customs FAQ page, or Regulations and Rulings published rulings,

it is promulgated without observance of procedures required by law, in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2)(B), and must be declared unlawful and set aside.

## COUNT III

49. Plaintiff incorporates paragraphs 1-48 above by reference.

50. To the extent Customs imposes a duty on the full value of a steel "derivative product", rather than just the value of its steel content, this constitutes the appraisement of the entire imported articles.

51. Section 402 of the Tariff Act of 1930, as amended 19 U.S.C. §1401a sets out various bases for the appraisement of imported merchandise.

Section 402(f)(2) of the Tariff Act of 1930, as amended [19 U.S.C. §1401a(f)(2)] specifies bases of appraisement of merchandise which are prohibited. In particular Section 402(f)(2) provides in relevant part:

> (2) Imported merchandise may not be appraised, for the purposes of this chapter, on the basis of –
>
> ***
>
> (B) A system that provides for the appraisement of imported merchandise at the higher of two alternative values;
>
> ***
>
> (G) Arbitrary or fictitious values

52. To the extent the CEE Memorandum provides for the assessment of a duty on the basis of the higher of two alternative values (value of steel content versus value of complete article), it is a method of appraisement prohibited by 19 U.S.C. § 1401a(f)((2)(B).

53. To the extent the CEE Memorandum provides for assessment of a duty on an imported article based on identification of a single component material of the article, it is an arbitrary and capricious method of appraisement prohibited by 19 U.S.C. §1401a(f)(2)(G).

54. To the extent the CEE Memorandum employs methods of appraisement prohibited by 19 U.S.C. §1401a(f)(2), and to the extent Customs has employed these methods to appraise plaintiff's merchandise in liquidation, this constitutes arbitrary and capricious agency action which must be set aside pursuant to the Administrative Procedures Act, 5 U.S.C. §706(2).

## **COUNT IV**

55. Paragraphs 1 through 54 are incorporated by reference as though fully set out herein.

56. Customs' position in the CEE Memo requiring Plaintiff to declare the non-steel content of its imports as steel-content constitutes a "collection of information" requirement for purposes of the Paperwork Reduction Act. *See* 44 U.S.C. § 3502(3).

57. Neither (a) the November 6, 2026 CF29 nor (b) the CEE memo, displays a control number assigned by the Director of the Office of Management and Budget.

58. The additional section 232 duties demanded by Customs, and paid by Plaintiff, on the non-steel content of its imports constitutes a "penalty," in the form of monetary damages, within the meaning of the Paperwork Reduction Act. *See* 44 U.S.C. § 3512(14).

59. The Paperwork Reduction Act, 44 U.S.C. § 3512(a) protects Plaintiff from assessment of a penalty duties when Customs has failed to inform Plaintiff that it was not required

to respond to the collection of information requirement because it did not display a valid OMB control number.

60.     The Paperwork Reduction Act may be raised as a complete defense, bar, or otherwise at any time during an applicable judicial action. *See* 44 U.S.C. § 3512(b). Accordingly, it is timely for Plaintiff to raise the Paperwork Reduction Act violation as a defense to Customs' retention of the additional section 232 duties demanded by Customs and paid by Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Court enter judgment in its favor and directing the appropriate Customs officers to remand to Customs and reliquidate plaintiff's subject entries at the rates and amount of duties asserted in the entry papers; and further, directing the appropriate Customs officers to refund to plaintiff any excess duties assessed in liquidation, plus interest as provided by law; and granting plaintiff such further and additional relief as this Court may deem just, including but not limited to attorney's fees and costs of suit..

*         *         *

Respectfully submitted,

NEVILLE PETERSON LLP

/s/John M. Peterson
John M. Peterson
Maria E. Celis
Patrick B. Klein
Sanzida Talukder
NEVILLE PETERSON LLP
One Exchange Plaza at 55 Broadway
New York, NY 10006
(212) 635-2730
(212) 635-0113 (FAX)

MICHAEL K. TOMENGA
NEVILLE PETERSON, LLP
1310 L STREET, N.W., SUITE 300
WASHINGTON, DC 20005-4870
(202) 776-1148
MTOMENGA@NPWDC.COM

*Counsel for Plaintiff*

Dated: January 27, 2026