UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

| | |
|---|---|
| EXPRESS FASTENERS, LTD., Plaintiff, v. UNITED STATES, Defendant. | Court No. 26-00853 |

**[PROPOSED] ORDER**

Upon reading defendant's cross-motion for judgment on the pleadings and partial motion to dismiss, plaintiff's response thereto; and upon consideration of other papers and proceedings had herein, it is hereby

**ORDERED** that defendant's cross-motion for judgment on the pleadings and partial motion to dismiss be, and hereby is granted; and it is further

**ORDERED** that plaintiff's motion for judgment on the pleadings is denied; and it is further

**ORDERED** that judgment is entered for defendant and this action is dismissed.

____________________________
JANE A. RESTANI, JUDGE

Dated: ____________________, 2026
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

| | |
|---|---|
| EXPRESS FASTENERS, LTD., Plaintiff, v. UNITED STATES, Defendant. | Court No. 26-00853 |

**DEFENDANT'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS, RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT, AND PARTIAL MOTION TO DISMISS**

Pursuant to Rules 12(b) and (c) of the Rules of the United States Court of International Trade (USCIT), defendant, the United States, respectfully moves for an Order: (1) granting defendant's cross-motion for judgment on the pleadings and partial motion to dismiss by finding that the merchandise at issue in this litigation is dutiable as determined by U.S. Customs and Border Protection; (2) denying plaintiff's motion for judgment on the pleadings; and (3) dismissing this action in its entirety. The bases for defendant's cross-motion for judgment on the pleadings and partial motion to dismiss are set forth in the accompanying memorandum.

WHEREFORE, defendant respectfully requests that an order be entered granting defendant's cross-motion for judgment on the pleadings and partial motion to dismiss, denying plaintiff's motion for judgment on the pleadings, entering judgment for defendant, dismissing this action, and granting defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy Eddon
GUY EDDON
Senior Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendants*

Of Counsel:
Sohom Datta
Senior Attorney
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: September 16, 2026

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

| | | |
|---|---|---|
| EXPRESS FASTENERS, LTD., | : | |
| Plaintiff, | : | Court No. 26-00853 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant. | : | |

**DEFENDANT'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS, RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT, AND PARTIAL MOTION TO DISMISS**


BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

GUY EDDON
Senior Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendants*

Of Counsel:
Sohom Datta
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

# TABLE OF CONTENTS

**PAGE**


BACKGROUND AND FACTS .....1

A. Section 232 Duties .....2

B. Agency Guidance .....5

C. The Entries at Issue .....5

ARGUMENT .....7

I. Legal Standards .....7

A. Motions for Judgment on the Pleadings Pursuant to USCIT R. 12(c) .....7

B. Motions to Dismiss Pursuant to USCIT R. 12(b)(1) .....9

II. CBP Correctly Assessed Section 232 Duties on Express Fasteners' Two Entries of Steel Fasteners .....9

A. Express Fasteners Protested CBP's Decision and Brought This Action Under 28 U.S.C. § 1581(a) .....9

B. CBP Correctly Applied the Law in Assessing Section 232 Duties .....10

III. Express Fasteners' APA Claims Must Be Dismissed .....15

A. APA Review Is Unavailable .....15

B. The Proclamation Did Not Require Rulemaking and in any Event the CBP Documents Were Guidance .....17

IV. Express Fasteners' Paperwork Reduction Act Claim Fails .....21

CONCLUSION .....27

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AAA Bonding Agency, Inc. v. United States Dep't of Homeland Sec.*,
2018 WL 11450370 (S.D. Tex. Mar. 26, 2018) .......... 25

*Am. Power Pull Corp. v. United States*,
No. 14-00088, 2015 WL 15029, *1 (Ct. Int'l Trade Jan. 13, 2015).......... 8

*Autoalliance Int'l, Inc. v. U.S.,*
29 CIT 1082 (2005) .......... 16

*Axle of Dearborn, Inc. v. Dep't of Com.*,
No. 25-00091, 2026 WL 2350891 (Ct. Int'l Trade Aug. 13, 2026) .......... 18

*Barron v. Reich*,
13 F.3d 1370 (9th Cir. 1994) .......... 8

*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 19

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) .......... 16, 17

*Cameron v. I.R.S.*,
593 F. Supp. 1540 (N.D. Ind. 1984),
*aff'd*, 773 F.2d 126 (7th Cir. 1985) .......... 23

*China Diesel Imports, Inc. v. United States*,
855 F. Supp. 380 (Ct. Int'l Trade 1994) .......... 10

*Cmty. Associations Inst. v. U.S. Dep't of the Treasury*,
No. 24-2118, 2025 WL 1824824 (4th Cir. May 6, 2025).......... 19

*Cmty. Associations Inst. v. Yellen*,
No. 24-CV-2118, 2024 WL 4571412 (E.D. Va. Oct. 24, 2024) .......... 19

*Coyer v. HSBC Mortg. Servs., Inc.*,
701 F.3d 1104 (6th Cir. 2012) .......... 8

*CR Indus. v. United States*,
10 CIT 561 (1986) .......... 9

*Erwin Hymer Grp. N. Am., Inc. v. United States*,
930 F.3d 1370 (Fed. Cir. 2019) .......... 10, 16

*Faus Group, Inc. v. United States*,
581 F.3d 1369 (Fed. Cir. 2009) .......... 7

*Forest Labs., Inc. v. United States*,
476 F.3d 877 (Fed. Cir. 2007) .......... 8

*Gassei v. Dep't of Justice*,
968 F.2d 19 (10th Cir. 1992) .......... 26

*Generra Sportswear Co. v. United States*,
905 F. 2d 377 (Fed. Cir. 1990) .......... 13

*Gossner Foods, Inc. v. Env't Prot. Agency*,
918 F. Supp. 359 (D. Utah 1996) .......... 22

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
189 F.3d 971 (9th Cir. 1999) .......... 8

*Int'l Custom Products, Inc. v. United States*,
549 F. Supp. 2d 1384 (Ct. Int'l Trade 2008) .......... 21

*Invenergy Renewables LLC v. United States*,
422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019) .......... 18

*JCM, Ltd. v. United States*,
210 F.3d 1357 (Fed. Cir. 2000) .......... 9

*Lerner New York, Inc. v. United States*,
908 F. Supp. 2d 1313 (Ct. Int'l Trade 2013) .......... 7

*Lonsdale v. U.S.*,
919 F.2d 1440 (10th Cir. 1990) .......... 23

*Maple Leaf Marketing*,
528 F. Supp. 3d 1372 (Ct. Int'l Trade 2021) .......... 19

*Midwest-CBK, LLC v. United States*,
578 F. Supp. 3d 1296 (Ct. Int'l Trade 2022),
*aff'd,* 163 F.4th 1365 (Fed. Cir. 2026) .......... 12

*Miller & Co. v. United States*,
824 F.2d 961 (Fed. Cir. 1987) .......... 16

*Nat'l Min. Ass'n v. McCarthy*,
758 F.3d 243 (D.C. Cir. 2014) ........ 20

*Nereida Trading Co. v. United States*,
34 CIT 241 (2010) ........ 15

*Nesarikar v. United States Patent and Trademark Office*,
No 2026-1167, 2026 WL 1298101 (Fed. Cir. May 12, 2026) ........ 24

*Orlando Food Corp. v. United States*,
140 F.3d 1437 (Fed. Cir. 1998) ........ 7, 8

*Pentax Corp. v. Robison*,
125 F.3d 1457 (Fed. Cir. 1997),
*modified*,135 F.3d 760 (Fed. Cir. 1998) ........ 9

*Ramzan v. United States Dep't of Educ.*,
2018 WL 3727339 (E.D.N.Y. July 31, 2018) ........ 25

*Royal United Corp. v. United States*,
34 CIT 756 (2010) ........ 16

*Sears Holding Mgmt. Corp. v. United States*,
36 CIT 1154 (2012) ........ 16

*Sherley v. Sebelius*,
689 F.3d 776 (D.C. Cir. 2012) ........ 18

*Springer v. C.I.R.*,
580 F.3d 1142 (10th Cir. 2009) ........ 25

*Steel Co. v. Citizens For A Better Environment*,
523 U.S. 83 (1998) ........ 9

*Sutton v. Providence St. Joseph Medical Center*,
192 F.3d 826 (9th Cir. 1999) ........ 24

*Teledyne, Inc. v. United States*,
50 Fed. Cl. 155 (2001) ........ 24

*United States v. Rockwell Automation, Inc*,
462 F. Supp. 2d 1243 (Ct. Int'l Trade 2006) ........ 20

*United States v. Ionia Mgmt. S.A.*,
498 F. Supp. 2d 477 (D. Conn. 2007) ........ 22

*United States v. Patridge*,
507 F.3d 1092 (7th Cir. 2007) ........................................................................ 22

*United States v. Saunders*,
951 F.2d 1065 (9th Cir. 1991) ........................................................................ 23

*Victoria's Secret Direct, LLC v. United States*,
769 F.3d 1102 (Fed. Cir. 2014) ........................................................................ 7

*Volkswagen of America, Inc. v. United States*,
532 F.3d 1365 (Fed. Cir. 2008) ........................................................................ 15

*VWP of America, Inc. v. United States*,
175 F.3d 1327 (Fed. Cir. 1999) ........................................................................ 12
*aff'd*, 117 F. App'x 113 (Fed. Cir. 2004) ........................................................ 12

*Wally Packaging, Inc. v. United States*,
7 CIT 19, 578 F. Supp. 1408 (1984) ................................................................ 9

*Whitfield v. United States Sec. of State*,
853 Fed. App'x 327 (10th Cir. 2021) ................................................................ 24

*Willis v. Comm'r*,
351 F. App'x 970 (5th Cir. 2009) .................................................................... 23

**Statutes**

5 U.S.C. §§ 551–559 ........................................................................ 15, 17, 19
5 U.S.C. § 706(2)(B) ........................................................................ 15
5 U.S.C. § 3512(a) ........................................................................ 25

19 U.S.C. § 1202 (Harmonized Tariff Schedule of the United States) ............................ 11
Chapter 73 ........................................................................ 17, 19
Heading 7318 ........................................................................ 11, 14
Subheading 9903.81.90 ........................................................................ 4, 11, 13, 14
Chapter 99, Subchapter III, U.S. Note 16, subds. (l)-(n), (u) ................................ 13, 14
19 U.S.C. § 1401a ........................................................................ 12, 13
19 U.S.C. § 1484 ........................................................................ 22, 23
19 U.S.C. § 1485(a) ........................................................................ 25
19 U.S.C. § 1500 ........................................................................ 22
19 U.S.C. § 1502 ........................................................................ 22
19 U.S.C. § 1508 ........................................................................ 25
19 U.S.C. § 1509 ........................................................................ 23, 25

28 U.S.C. § 1581 ........ *passim*
28 U.S.C. § 2638 ........ 16
28 U.S.C. § 2640(a)(1) ........ 10
44 U.S.C. § 3502(14) ........ 25
44 U.S.C. § 3512 ........ 21, 23
44 U.S.C. § 3518(c)(1)(B)(ii) ........ 23

**Rules**

USCIT Rule 12 ........ 1, 8, 9

**Regulations**

5 C.F.R. § 1320.6(e) ........ 22
19 C.F.R. § 152.11 ........ 11
19 C.F.R. § 163 ........ 23, 25
19 C.F.R. § 177.1(d)(1) ........ 20

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3ed. 2004) ........ 8

83 Fed. Reg. 11625 (Mar. 15, 2018) ........ 2, 3
83 Fed. Reg. 13361 (Mar. 28, 2018) ........ 2
83 Fed. Reg. 20683 (Apr. 30, 2018) ........ 3
83 Fed. Reg. 25857 (May 31, 2018) ........ 3
84 Fed. Reg. 23987 (May 19, 2019) ........ 3
85 Fed. Reg. 5281 (Jan. 24, 2020) ........ 2, 3
85 Fed. Reg. 54877 (Aug. 28, 2020) ........ 3
87 Fed. Reg. 19351 (Mar. 31, 2022) ........ 3
87 Fed. Reg. 33407 (May 27, 2022) ........ 3
87 Fed. Reg. 33591 (May 31, 2022) ........ 3
88 Fed. Reg. 36438 (May 31, 2023) ........ 3
89 Fed. Reg. 48233 (May 31, 2024) ........ 3
90 Fed. Reg. 9817 (Feb. 18, 2025) ........ 3, 6, 7
90 Fed. Reg. 24199-24201 (June 9, 2025) ........ *passim*

U.S. Customs and Border Protection, Cargo Systems Messaging Service Message #69252300, Guidance: Section 232 Copper Smelt and Cast Reporting Requirements (July 16, 2026) ........ 19

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

| | | |
|---|---|---|
| EXPRESS FASTENERS, LTD., | : | |
| Plaintiff, | : | Court No. 26-00853 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS, RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT, AND PARTIAL MOTION TO DISMISS**

Defendant, United States (the Government), submits this memorandum in support of its cross-motion for judgment on the pleadings and partial motion to dismiss, pursuant to Rules 12(b) and (c) of the Rules of the United States Court of International Trade. For the reasons established below, the Court should grant judgment in favor of the United States because there are no genuinely disputed issues of material fact and the United States is entitled to judgment as a matter of law.

## BACKGROUND AND FACTS

This case is brought by Plaintiff Express Fasteners. Ltd. (Express Fasteners) to contest the deemed denial of its protest brought under 19 U.S.C. § 1514 with jurisdiction under 28 U.S.C. § 1581(a). Express Fasteners protested the amount of Section 232 duties assessed on its fasteners made 100 percent of steel arguing that it should be permitted to back out, among other things, the cost of manufacturing and fabrication to arrive at the correct appraisement. However, the Proclamations imposing Section 232 duties, the valuation statute, and the Harmonized Tariff Schedule of the United States (HTSUS) do not allow for a product that is made solely of steel to

avoid Section 232 duties in this way. As demonstrated below, Express Fasteners correctly availed itself of the protest procedure to challenge the valuation of its goods, has an adequate remedy in this court case under section 1581(a), and cannot improperly annex claims under the Administrative Procedure Act (APA) to this action.

**A. Section 232 Duties**

Section 232 duties on steel and steel derivative articles stem from several Presidential proclamations, the first dating back to 2018. Through these proclamations, the President has amended the HTSUS to reflect additional Section 232 duties, as applicable.

Presidential Proclamation No. 9705 (March 8, 2018), *Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11625 (March 15, 2018), as amended by Presidential Proclamation No. 9711 (March 22, 2018), *Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 13361 (March 28, 2018), amended the HTSUS to reflect that all imported steel articles as specified in the proclamation's annex shall be subject to an extra 25 percent *ad valorem* duty in addition to other duties, fees, exactions, and charges applicable to such imported steel articles. *See Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11625, provision 2 (March 15, 2018).

Presidential Proclamation No. 9980 (January 24, 2020), *Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles Into the United States*, 85 Fed. Reg. 5281, amended the HTSUS to reflect that the 25 percent *ad valorem* tariff imposed by Proclamation No. 9705 applies to steel derivative articles.[1] *See Adjusting Imports of Derivative Aluminum*

[1] Express Fasteners does not dispute that its imported goods are derivative steel articles subject to the Proclamations. *See* Pl.'s Mot. for J. at 2 (noting that the Presidential actions apply to a "wide range of steel 'derivative products' including the machine screws and fasteners which plaintiff imports from Taiwan" and are at issue in this case).

*Articles and Derivative Steel Articles Into the United States*, 85 Fed. Reg. 5281 (January 24, 2020).

Presidential Proclamation No. 10896 (February 10, 2025), *Adjusting Imports of Steel Into the United States*, 90 Fed. Reg. 9817, modified the HTSUS to reflect the termination of all modifications, exemptions,[2] and exclusions to Proclamation No. 9705, as amended, effective March 12, 2025. *See Adjusting Imports of Steel Into the United States*, 90 Fed. Reg. 9817, 9820-21 and 9825, provision 7 (February 10, 2025).

Presidential Proclamation No. 10896 amended the HTSUS to reflect that, as of March 12, 2025, the 25 percent *ad valorem* Section 232 duties applied to imports of steel and steel derivative articles from all countries as set forth in Proclamation No. 9705 and Proclamation No. 9980. *Id.* at 9824-25, provision 4. Presidential Proclamation No. 10896 amended the HTSUS to expand the range of articles Section 232 duties apply to, which included several subheadings of Chapter 73, HTSUS. *Id.*, through Annex I. Annex I of Proclamation No. 10896

[2] Between the issuance of Proclamation No. 97050 and Proclamation No. 10896, the United States entered into several agreements with countries that either modified or exempted Section 232 duties on steel and steel derivative articles. *See, e.g., Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 20683 (April 30, 2018) (excluding steel articles from South Korea from Section 232 duties); *Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 25857 (May 31, 2018); *Adjusting Imports of Steel Into the United States*, 84 Fed. Reg. 23987 (May 19, 2019) (excluding steel articles from Canada and Mexico from Section 232 duties); *Adjusting Imports of Steel Into the United States*, 85 Fed. Reg. 54877 (August 28, 2020) (reducing Section 232 quantitative limitations on steel articles from Brazil); *Adjusting Imports of Steel Into the United States*, 87 Fed. Reg. 19351 (March 31, 2022) (adjusting Section 232 duties on steel articles from Japan); *Adjusting Imports of Steel into the United States*, 87 Fed. Reg. 33407 (May 27, 2022) (adjusting Section 232 duties on steel articles from Ukraine); *Adjusting Imports of Steel into the United States*, 87 Fed. Reg. 33591 (May 31, 2022) (adjusting Section 232 duties on steel articles from United Kingdom); *Adjusting Imports of Steel Into the United States*, 88 Fed. Reg. 36438 (May 31, 2023) (adjusting Section 232 duties on steel articles from Ukraine); *Adjusting Imports of Steel Into the United States*, 89 Fed. Reg. 48233 (May 31, 2024) (adjusting Section 232 duties on steel articles from Ukraine).

amended the HTSUS by, among other things, inserting the following Subdivision (m) in Note 16 of Subchapter III of Chapter 99:

> The rates of duty set forth in heading 9903.81.90 apply to all imported derivative iron or steel products that are classified in the following subheadings of the HTSUS, unless the derivative iron or steel product was processed in another country from steel articles that were melted and poured in the United States: [subheadings of heading 7318, HTSUS, under which Express Fasteners' goods were classified.]

Presidential Proclamation No. 10947 (June 3, 2025), *Adjusting Imports of Aluminum and Steel Into the United States*, 90 Fed. Reg. 24199, amended the HTSUS to reflect an increase in Section 232 duties on steel and steel derivative articles from 25 percent *ad valorem* to 50 percent *ad valorem*, starting June 4, 2025. *Adjusting Imports of Aluminum and Steel Into the United States*, 90 Fed. Reg. at 24200, provision 1 (June 3, 2025). Proclamation No. 10947 amended the HTSUS to reflect that the 50 percent *ad valorem* Section 232 duties only applied to the steel content of articles in Chapter 73, HTSUS. *See id.* at 24201, provision 6. The proclamation provides that:

> The additional *ad valorem* duties described in clause 1 and clause 7 of this proclamation shall apply only to the steel content of articles in Chapter 73 of the HTSUS and only to the aluminum content of articles in Chapter 76 of the HTSUS.

*Id*. The proclamation further directed CBP to issue guidance mandating strict compliance with declaration requirements for steel content in imported articles:

> U.S. Customs and Border Protection (CBP) shall issue authoritative guidance mandating strict compliance with declaration requirements for steel and aluminum content in imported articles and outlining maximum penalties for noncompliance, including that importers who submit underreported declarations may be subject to severe consequences, including but not limited to significant monetary penalties, loss of import privileges, and criminal liability, consistent with United States law.

*Id*.

Heading 9903.81.90 was added to the HTSUS by the Presidential proclamations discussed above, and which states: "[e]xcept as provided in heading 9903.81.92, derivative iron or steel products provided for in the tariff subheadings enumerated in Subdivision (m) of note 16 to this subchapter" shall have a 50 percent *ad valorem* Section 232 duty applied.

**B. Agency Guidance**

Subsequent to Proclamation No. 10947, CBP issued frequently asked questions (FAQs), and a Cargo Systems Messaging Service (CSMS) message, which were non-binding administrative guidance to the trade community on the implementation of Section 232 duties. *See* CSMS Message No. 65236374 (June 3, 2025) (Compl. Ex. 3); FAQs (Compl. Ex. 4). The agency's Base Metals Center for Excellence and Expertise (CEE) also issued an internal guidance memorandum. CEE Memo (Compl. Ex. 1). The CEE Memo provided guidance to CBP staff on how to properly apply the provisions of Presidential Proclamation No. 10947, without expanding the provisions established by the Proclamation.

**C. The Entries at Issue**

The merchandise at issue in this case consists of machined screws and fasteners made entirely of steel, which Express Fasteners entered on August 28, 2025, and October 13, 2025, under cover of Entry Nos. 8GX-8020487-8 and 8GX-8021704-5, respectively. Pl.'s Mot. for J. at 7. Express Fasteners entered its 100-percent-steel fasteners with "steel" and "non-steel" values. *See* R. 73.1 filing (ECF No. 15-1).

On November 21, 2025 and December 3, 2025, CBP issued CF-29s informing Express Fasteners that the agency had rate advanced the entries so that 50 percent *ad valorem* Section 232 duties were applied to the full value of the steel derivative articles. Both CF-29s explained that for "articles that are wholly made of steel or aluminum, there is no backing out of

any costs not allowed by the Customs Value laws (so no backing out fabrication, labor, machining, conversion, etc., costs)." In other words, there were no "non-steel" portions of Express Fasteners' 100-percent-steel fasteners.

Express Fasteners classified, and CBP liquidated, the merchandise at issue under various subheadings of Chapter 73, HTSUS, including: 7318.15.4000, 7318.22.0000, 7318.16.0085, 7318.15.2065, 7318.29.0000, 7318.16.0085, and 7318.14.1060. All of these subheadings are subject to heading 9903.81.90, which was added to the HTSUS by the Presidential Proclamations discussed above, and are assessed Section 232 duties.

On December 12, 2025, Express Fasteners protested CBP's liquidations of the entries in Protest No. 3901-25-132888. Summons (ECF No. 1). In its protest, Express Fasteners contested the application of 50 percent *ad valorem* Section 232 duties to the full value of the derivative steel articles in the two entries at issue.

The core of Express Fasteners' protest argument was that Presidential Proclamation No. 10896 of February 10, 2025, *Adjusting Imports of Steel Into the United States*, 90 Fed. Reg. 9817 (published February 18, 2025), and Presidential Proclamation No. 10947 of June 3, 2025, *Adjusting Imports of Aluminum and Steel Into the United States* 90 Fed. Reg. 24199 (published June 8, 2025), and CSMS Message No. 65236374 (June 3, 2025), permitted importers of steel derivative articles made *completely of steel* to back out manufacturing costs and expenses, and to pay Section 232 duties only on the *value* of the steel content, and that CBP's position to the contrary was unlawful.

As Express Fasteners requested accelerated disposition of the protest, the protest was deemed denied on January 11, 2026. Pl.'s Mot. for J. at 15; Summons (ECF No. 1).

On January 27, 2026, Express Fasteners filed a summons and complaint invoking this Court's jurisdiction under 28 U.S.C § 1581(a). ECF Nos. 1 and 2.

Defendant filed its answer on April 17, 2026. ECF No. 17.

The gravamen of Express Fasteners' complaint and Motion for Judgment on the Pleadings is that CBP wrongfully denied Express Fasteners' protest of December 12, 2025, which asserted that Customs had incorrectly applied Presidential Proclamation No. 10896 (February 10, 2025), and Presidential Proclamation No. 10947 (June 3, 2025) in assessing Section 232 duties on its steel screws and fasteners. Compl. ¶¶ 8-12 (ECF No. 2).

As discussed below, there is no legal basis for Express Fasteners' interpretation of the application of Section 232 duties and therefore judgment on the pleadings should be granted in favor of the Government and certain counts should be dismissed.

## <u>ARGUMENT</u>

## I. LEGAL STANDARDS

### A. Motions for Judgment on the Pleadings Pursuant to USCIT R. 12(c)

This action was brought pursuant to 28 U.S.C. § 1581(a) to challenge CBP's liquidation of Express Fasteners' entries as contrary to Presidential Proclamation Nos. 10896 and 10947, which were implemented through modifications to Chapter 99 of the HTSUS. As in all such cases, Express Fasteners has the burden of establishing that the Government's liquidation of the subject merchandise was incorrect, and the Court, then, has an "independent duty to arrive at the correct result." *Lerner New York, Inc. v. United States*, 908 F. Supp. 2d 1313, 1317-18 (Ct. Int'l Trade 2013) (internal citations omitted), *aff'd sub nom*, *Victoria's Secret Direct, LLC v. United States*, 769 F.3d 1102 (Fed. Cir. 2014). Decisions challenged under 28 U.S.C. § 1581(a) are reviewed *de novo* by this Court through a two-step analysis. *Faus Group, Inc. v. United States*, 581 F.3d 1369, 1371-72 (Fed. Cir. 2009). First, "the proper meaning of the relevant tariff

provisions" must be determined—a question of law. *Id.* at 1372 (citing *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998)). Second, the Court must determine "whether the merchandise at issue falls within a particular tariff provision as construed" – a question of fact. *Id.*

Judgment on the pleadings pursuant to USCIT R. 12(c) is warranted where, after an answer to the complaint has been filed, a party demonstrates that it is entitled to judgment as a matter of law. *See Forest Labs., Inc. v. United States*, 476 F.3d 877, 881 (Fed. Cir. 2007). The Court, in making its determination, can consider only the pleadings, documents attached thereto, and matters upon which the Court can take judicial notice. *See* 5C Charles Alan Wright & Arthur R. Miller, FED. PRAC. AND PROCEDURE § 1367 (3d Ed. 2004) ("[A] Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute . . . and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice.") (citations omitted); *see also Am. Power Pull Corp. v. United States*, No. 14-00088, 2015 WL 15029, *1 (Ct. Int'l Trade Jan. 13, 2015). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1107 (6th Cir. 2012) (citations omitted).

In deciding a USCIT Rule 12(c) motion for judgment on the pleadings, the Court accepts all well-pleaded facts as true and views them in the light most favorable to the non-moving party. *Id*. The Court may consider facts that are contained in "materials of which the court may take

judicial notice." *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (quoting *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)).

In this case, there are no material facts in dispute, and the question as to the application of Section 232 duties is a legal issue. Accordingly, judgment on the pleadings is appropriate.

**B. Motions to Dismiss Pursuant to USCIT R. 12(b)(1)**

The Court's determination of its subject-matter jurisdiction is a threshold inquiry. *Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83, 94-95 (1998); *CR Indus. v. United States*, 10 CIT 561, 562 (1986) ("It is fundamental that the existence of a jurisdictional predicate is a threshold inquiry in which plaintiff bears the burden of proof."). Whether to grant a motion to dismiss for lack of jurisdiction is a question of law. *JCM, Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000). Where jurisdiction is challenged pursuant to Rule 12(b)(1), the burden rests on the plaintiff to establish the basis for jurisdiction. *Pentax Corp. v. Robison*, 125 F.3d 1457, 1462 (Fed. Cir. 1997), *modified, in part*, 135 F.3d 760 (Fed. Cir. 1998); *see also Wally Packaging, Inc. v. United States*, 7 CIT 19, 20, 578 F. Supp. 1408, 1410 (1984) (noting that "[w]hen the Court's jurisdiction is challenged, the party asserting jurisdiction has the burden of establishing that jurisdiction exists").

Express Fastener's complaint includes allegations that are improperly brought and should be dismissed.

## II. CBP Correctly Assessed Section 232 Duties on Express Fasteners' Two Entries of Steel Fasteners

### A. Express Fasteners Protested CBP's Decision and Brought This Action Under 28 U.S.C. § 1581(a)

CBP liquidated Express Fasteners' entries, and Express Fasteners protested CBP's decision regarding the assessment of Section 232 duties on its steel fasteners pursuant to 19 U.S.C. § 1514. Specifically, Express Fasteners disagreed with CBP's liquidation of its entries

which applied Section 232 duties to the full value of Express Fasteners' 100-percent-steel goods, according to the invoice prices paid by Express Fasteners.

To the extent a party seeks review of CBP's decision, the course of action is to protest. Section 1514(a) lists seven categories of enumerated decisions that are subject to the protest procedure. 19 U.S.C. § 1514(a)(1)-(7). On December 12, 2025, Express Fasteners filed Protest No. 3901-25-132888, challenging the appraisement of its merchandise and the classification and rate and amount of duties chargeable. 19 U.S.C. § 1514(a)(1) and (2). And when the protest was deemed denied, Express Fasteners pursued the avenue for relief and filed this action seeking a refund of duties pursuant to 28 U.S.C. § 1581(a).

Section 1581(a) provides that the Court of International Trade has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part." In other words, "Congress established § 1581(a) as the jurisdictional route for the CIT to address challenges to protest denials." *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1376 (Fed. Cir. 2019), *see also China Diesel Imports, Inc. v. United States*, 855 F. Supp. 380, 385 (Ct. Int'l Trade 1994) ("Once a protest is filed and denied and suit is filed in this court, the court is directed to adjudicate the matter on the record before the court. 28 U.S.C. § 2640(a)(1)).

**B. CBP Correctly Applied the Law In Assessing Section 232 Duties**

Turning to the crux of this case, CBP's decision to apply Section 232 duties is correct. There is no dispute that Section 232 duties apply to Express Fasteners' goods made of steel. Express Fasteners' core argument in this case is that CBP erred in assessing Section 232 duties on the full value of its 100-percent-steel products imported into the United States. Instead, Express Fasteners argues that CBP should have assessed Section 232 duties only on the "value of steel content" of its merchandise, interpreted by Express Fasteners to exclude "costs of fabrication, processing, labor or other costs incurred in producing the merchandise, [including]

allocation of any profits or markups earned by the seller." Pl.'s Mot. for J. at 5. Express Fasteners' argument is wholly unsupported by the plain language of the Section 232 Proclamations and applicable law.

As noted above, Proclamation No. 10896 increased Section 232 duties from 25 to 50 percent stating that the additional duties "shall apply only to the steel content of articles in Chapter 73 of the HTSUS and only to the aluminum content of articles in Chapter 76 of the HTSUS." Even Express Fasteners agrees that the Proclamation "requires assessment of a 50% duty on 'the steel content of articles in Chapter 73 of the HTS,'" but "intuit[s] from the fact that the tax is *ad valorem* that this 50% impost must be on the value of the steel content." Pl.'s Mot. for J. at 4. Express Fasteners' citationless intuition notwithstanding, if an imported product is comprised of 100 percent steel, pursuant to the Proclamations and HTSUS sections effectuating them, the *ad valorem* Section 232 duties apply to the entire entered value of the product.

The HTSUS is the legal authority for classification purposes and assessing duties on merchandise entered into the United States. *See* 19 C.F.R. § 152.11 (stating that "[m]erchandise shall be classified in accordance with the [HTSUS] (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings"). A steel product would be classified within Chapter 73, Articles of iron or steel. For Section 232 duty purposes, goods classified in heading 7318 (such as Express Fasteners' goods), are subject to Chapter 99 heading 9903.81.90, which states: "Except as provided in heading 9903.81.92, derivative iron or steel products provided for in the tariff subheadings enumerated in subdivision (m) of note 16 to this subchapter" shall have the "duty provided in the applicable subheading + 50%."

Nothing in Subdivision (m) suggests that the 50 percent *ad valorem* duty is applicable to only a portion of the merchandise classified in the listed subheadings of Chapter 73. And no

exclusion for the "costs of fabrication, processing, labor or other costs incurred in producing the merchandise, [including] allocation of any profits or markups earned by the seller," is carved out. Pl.'s Mot. for J. at 5. Rather, the plain language of Subdivision (m) requires that the 50 percent *ad valorem* duty apply to the entire value of the steel merchandise and not just to the "value of the steel content." Pl.'s Mot. for J. at 4.

CBP has been consistent in applying Section 232 and assessing Section 232 duties in this way. CBP's methodology comports with 19 U.S.C. § 1401a, which provides that duties shall be assessed on the appraised value of the merchandise at the time of entry. 19 U.S.C. §§ 1401a(a)(1), 1500; *VWP of America, Inc. v. United States*, 117 F. App'x 113, 115 (Fed. Cir. 2004) ("Section 1401a of title 19 provides the method by which imported merchandise is to be appraised."). Section 1401a further provides that the default method of determining value is transaction value, representing the "price actually paid or payable for the merchandise when sold for exportation to the United States." *Midwest-CBK, LLC v. United States*, 578 F. Supp. 3d 1296, 1303-04 (Ct. Int'l Trade 2022), *aff'd*, 163 F. 4th 1365 (Fed. Cir. 2026) (quoting 19 U.S.C. § 1401a(b)).

By statute, CBP must employ transaction value wherever possible and may only resort to "secondary valuation methods in the order listed in § 1401a(a)(1) until an appraisal is obtained." *VWP v. America, Inc. v. United States*, 175 F.3d 1327, 1330 (Fed. Cir. 1999). Transaction value is derived from the "price actually paid" for the holistic good, not the notional value of its component raw materials exclusive of labor and production costs. *See* 19 U.S.C. §§ 1401a(b)(1), (b)(4)(A) (defining "price actually paid" as the total payment of the imported goods from the buyer to the seller). Certain items not relevant here, including construction costs or technical assistance after importation, transportation after importation, duties, and domestic taxes, are

excluded from the transaction value. 19 U.S.C. § 1401a(b)(3). However, the costs that Express Fasteners seeks to exclude, such as the costs of fabrication, processing, labor or other costs incurred in producing the merchandise, are not excluded. Had Congress intended to exclude important categories such as production and labor costs, it would have expressly stated them among the other enumerated exclusions in the statute. *See Generra Sportswear Co. v. United States*, 905 F. 2d 377, 379 (Fed. Cir. 1990) (finding that "[t]he term 'total payment' is all-inclusive" and, if Congress had intended to exclude certain costs from transaction value, it would have explicitly done so with the other exclusions in 19 U.S.C. § 1401a(b)(3)).

Customs valuation is consistently based on the price at which goods sold. Under the GATT, "'[a]ctual value' should be the price at which, at a time and place determined by the legislation of the country of importation, such or like merchandise is sold or offered for sale in the ordinary course of trade under fully competitive conditions." 1947 General Agreement on Tariffs and Trade, Article VII Section 2, General Agreement on Tariffs and Trade, 61 Stat. A3, T.I.A.S. No. 1700, 55 U.N.T.S. 182 (1947). However, if transaction value cannot be ascertained, section 1401a provides several alternate methods of appraisal, listed in descending order of priority, to be employed until the value can be successfully determined. *Midwest-CBK,* 578 F. Supp. 3d at 1304. It bears noting that none of the other lower-priority alternative methods allow for the deduction of production and/or labor costs from the appraised value of the imported merchandise. *See* 19 U.S.C. § 1401a(c)-(e), (e)(1)(A) (stating that the computed value expressly *includes* the value of the materials and fabrication).

Here, CBP used transaction value, which was the entire invoice price of the steel fasteners made entirely of steel, to determine Section 232 duties. There was no basis for

resorting to any other method of appraisement as Express Fasteners contends. Pl.'s Mot. for J. at 33-34.

Moreover, a comparison of Subdivision (m) with other subdivisions implementing the Section 232 proclamations underscores Express Fasteners' erroneous interpretation. If Congress wanted to make explicit distinctions where a duty "shall only apply to the declared value of the steel content of the derivative article," it would have done so. For example, Subdivisions (n) and (u) state:

> (n) For any derivative steel article that is classified in one of the subheadings of the HTSUS that is listed in this subdivision, the additional ad valorem duty imposed by heading 9903.81.91 *shall only apply to the declared value of the steel content of the derivative article. The quantity of the steel content shall be reported in kg* for heading 9903.81.91, in addition to the units provided in chapters 1 through 97 for the derivative steel article, in accordance with Statistical Note 1(b) of Chapter 99.[3]
>
> (u) For any derivative steel article that is classified in one of the subheadings of the HTSUS that is listed in this subdivision, the additional ad valorem duty imposed by heading 9903.81.98 *shall only apply to the declared value of the steel content of the derivative article. The quantity of the steel content shall be reported in kg* for heading 9903.81.98, in addition to the units provided in chapters 1 through 97 for the derivative steel article, in accordance with Statistical Note 1(b) of Chapter 99.[4]

Subdivisions (n) and (u) of Note 16 of Subchapter III of Chapter 99, HTSUS (emphasis added). While these subdivisions make clear that Section 232 duties apply only to the "declared value of the steel content" of the article, Subdivision (m) makes no such distinction.

Here, CBP assessed duties applying the laws discussed above. Because Express Fasteners' steel fasteners were primarily classified under heading 7318, were subject to heading

[3] Subheading 9903.81.91, HTSUS states: "Except as provided in heading 9903.81.92, derivative iron or steel products provided for in the tariff subheadings enumerated in subdivision (n) of note 16 to this subchapter...."

[4] Subheading 9903.81.98, HTSUS states: "Except as provided in heading 9903.81.92, derivative iron or steel products of the United Kingdom provided for in the tariff subheadings enumerated in subdivision (u) of note 16 to this subchapter."

9903.81.90, and are of 100-percent-steel content, Section 232 duties applied to the entirety of the imported fasteners. CBP looked at the full value of the fasteners which was the invoice price paid by Express Fasteners for the merchandise, typical of the transaction value method of appraisement. CBP did not exclude any costs of fabrication, processing, labor or other costs of production, or the allocation of profits or markups, Pl.'s Mot. for J. at 5, as there is no legal basis to do so, and CBP correctly assessed Section 232 duties on Express Fasteners' steel fasteners.

Thus, CBP's assessment is correct, and judgment on the pleadings should be granted in the Government's favor.

**III. Express Fasteners' APA Claims Must Be Dismissed**

**A. APA Review Is Unavailable**

As discussed above, Express Fasteners does not have a claim under the APA because Express Fasteners has an avenue for relief and is engaged in pursuing that avenue by virtue of its protest and commencing this case before the Court pursuant to 28 U.S.C. § 1581(a). 19 U.S.C. § 1514(a); 28 U.S.C. § 1581(a); *Volkswagen of America, Inc. v. United States*, 532 F.3d 1365, 1374 (Fed. Cir. 2008) (holding that section 1514 precluded judicial review of appellant's APA claim). Three of Express Fasteners' four Counts in its Complaint allege violations of the "Administrative Procedures [*sic*] Act." *See* Compl. ¶¶ 38, 40, 48, and 54 (Counts I, II, and III). However, these claims under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, must be dismissed.

Express Fasteners framed Counts I through III of its Complaint as APA challenges, citing 5 U.S.C. § 706(2)(B), and specifically challenging CBP guidance contained in the CEE Memo. *See, e.g.,* Compl. ¶ 40 ("To the extent [th]at the CEE Memo was required to be promulgated as a regulation pursuant to the Administrative Procedure[] Act, and has not been so promulgated, it is null and void and of no effect, and this court must set it aside pursuant to 5 U.S.C. § 706(2)(B),

along with actions taken pursuant to the CEE Memo, including the appraisement of plaintiff's imported goods in liquidation"); *see also* Compl. ¶¶ 48, 54. Counts I-III of Express Fasteners' complaint are "dependent on and consistent with the single procedure specified by 19 U.S.C. § 1514"—*i.e.*, they challenge the denial of a protest. *Nereida Trading Co. v. United States*, 34 CIT 241, 251 (2010). Indeed, an adequate remedy is available to Express Fasteners via section 1581(a), based on this Court's *de novo* review.

Notably, 28 U.S.C. § 1581(i) is the purely residual vehicle for an APA claim in this Court. *See, e.g.*, *Sears Holding Mgmt. Corp. v. United States*, 36 CIT 1154, 1156 (2012). However, Express Fasteners does not rely on 28 U.S.C. § 1581(i) in its complaint, nor could it. Section 1581(i), the Court's "residual" jurisdiction, should be applied "only if a remedy under another section of 1581 is unavailable or 'manifestly inadequate.'" *Sears*, 36 CIT at 1156 (quoting *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987)), *see also Erwin Hymer*, 930 F.3d at 1376 ("[i]mporters … should not be permitted to rest on artful or creative pleadings to expand the jurisdictional scope of § 1581(i), which Congress limited as a statutory basis for the CIT's jurisdiction over protests") (citation omitted).

By its motion for judgment, Express Fasteners now argues it can bring an APA claim under 28 U.S.C. § 2638 (new grounds in support of a civil action). Pl.'s Mot. for J. at 29-30. Express Fasteners relies on *Autoalliance Int'l, Inc. v. U.S.,* 29 CIT 1082, 1093-94 (2005), which states that "28 U.S.C. § 2638 permits this Court to consider any new grounds, such as the APA claim, during the course of litigation." *Id.* at 30. However, as the plaintiff in *Autoalliance* discovered, § 2638 is not a backdoor to bring APA claims that it otherwise could not bring. *Autoalliance*, 29 CIT at 1094. Like the plaintiff in *Autoalliance*, Express Fasteners must

demonstrate why the § 1581(a) proceeding is "manifestly inadequate" in order to obtain jurisdiction under § 1581(i), which it fails to do.

Express Fasteners' APA counts are predicated on the denial of its protest, for which Congress has already provided "special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). "Only if the challenged final agency action is one 'for which there is no other adequate remedy in a court,' … does the APA provide an independent cause of action." *Royal United Corp. v. United States*, 34 CIT 756, 763 (2010) (citations omitted). The Supreme Court has held that "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action [and] … § 704 does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen*, 487 U.S. at 903 (quotation marks, footnotes and citations omitted).

Because an adequate remedy is available to Express Fasteners through review of its protest under 19 U.S.C. § 1514(a), APA review is inappropriate and Counts I-III should therefore be dismissed.

**B. The Proclamation Did Not Require Rulemaking and in any Event the CBP Documents Were Guidance**

Contrary to Express Fasteners' contentions, the Proclamation did not require CBP to engage in notice and comment rulemaking subject to the provisions of 5 U.S.C. § 553. Pl.'s Mot. for J. at 16-23. Express Fasteners asserts that documents drafted by CBP, namely the CEE Memo (Compl. Ex. 1), the CF-29 Notice of Action (Compl. Ex. 2), CSMS Message No. 65236374 (Compl. Ex. 3), and the FAQs (Compl. Ex. 4) (collectively, the CBP documents), that provide information about the Proclamation's tariffs were subject to APA rulemaking requirements. Express Fasteners is incorrect.

Proclamation No. 10947 imposed 50 percent Section 232 duties only on the steel content of articles in Chapter 73, HTSUS. *See* Provision 6. The Proclamation states that the additional duties "shall apply only to the steel content of articles in Chapter 73 of the HTSUS." *Id.* Provision 10 then provides that "[t]he Secretary [of Commerce] *may* issue regulations and guidance consistent with this proclamation, including to address operational necessity." (emphasis added). There is nothing in the Proclamation that mandates the issuance of rules or regulations to the extent that Express Fasteners suggests. Moreover, since Provision 10 permits the Secretary *of Commerce* to issue regulations and does not address CBP, it in no way can be read to create a requirement for note-and-comment rulemaking upon CBP.

Nonetheless, Express Fasteners contends that the Proclamation mandates notice and comment rulemaking because it imposes a tax, and it requires creation of a new HTSUS code. Pl.'s Mot. for J. at 19-20. But neither of these mandates requires CBP to fill in any "gaps," as the Proclamation itself is clear.[5] Unlike in *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019), which Express Fasteners cites, here there was no delegation of authority to the agency and CBP did not have to "design" a regulatory scheme. Pl.'s Mot. for J. at 20. CBP's actions did not result in the creation of new HTSUS codes, as those were already appended to the Presidential Proclamation. CBP's role here is more akin to "[a]gency ministerial actions implementing lawful exercises of Presidential authority [which] cannot be struck down under the APA because 'an agency under the direction of the executive branch . . . must implement the President's policy directives to the extent permitted by law.'" *Axle of Dearborn, Inc. v. Dep't of Com.*, No. 25-00091, 2026 WL 2350891, at *13 (Ct. Int'l

[5] Similarly, the Proclamation did not leave any gaps for the agency to fill with regulation as Express Fasteners suggests (*see e.g.*, Pl.'s Mot. for J. at 22, 26, 28), since the Proclamation is clear that Section 232 duties are applied to the steel content and section 1401a applies to the method of appraisement.

Trade Aug. 13, 2026) (APA did not apply to ministerial agency actions taken by CBP in implementing a Presidential executive order that rescinded the *de minimis* exemption), quoting *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012).

The documents CBP issued were guidance for the importing community. CSMS Message No. 65236374 and the FAQs communicated the steel and aluminum tariffs imposed by Presidential Proclamation No. 10947 to the public, and conveyed instructions on how to document such imports upon entry. These documents do not give rise to any challengeable rights to importers and did not create any new rights or obligations as Express Fastener contends.[6] Pl.'s Mot. for J. at 7. *See Maple Leaf Marketing*, 528 F. Supp. 3d at 1372, 1379 (finding that "message communicating the contents of [a Presidential] Proclamation . . . to importers via its Cargo Systems Messaging Service" was not subject to APA review); *see also Cmty. Associations Inst. v. Yellen*, No. 24-CV-2118, 2024 WL 4571412, at *6 (E.D. Va. Oct. 24, 2024), *appeal held in abeyance sub nom. Cmty. Associations Inst. v. U.S. Dep't of the Treasury*, No. 24-2118, 2025 WL 1824824 (4th Cir. May 6, 2025) (finding that FAQs that explain without modifying existing obligations are not reviewable final agency action). Moreover, the FAQ that Express Fasteners cites in its motion for judgment is inapplicable to the goods at issue here. Pl.'s Mot. for J. at 10 (quoting the FAQ for "How to determine the value of aluminum or steel content for derivative products outside of Ch. 76 or 73?"). Here, the parties do not dispute that the goods are correctly classified in Chapter 73, HTSUS, and therefore the quoted FAQ is inapplicable to the merchandise at issue.

---

[6] The CSMS portal informs all users that "[t]hese documents may qualify as a "guidance document" as set forth in Executive Order 13891 and interpretations thereof; such guidance documents are not binding and lack the force and effect of law, except as authorized by law or as incorporated into a contract." CBP, *Cargo Systems Messaging Service*, accessed on Sept. 3, 2026, available at https://www.cbp.gov/trade/automated/cargo-systems-messaging-service.

Express Fasteners next points to the CEE Memo arguing that it is a legislative rule creating new rights, duties, or obligations on the public or a modification to the CSMS and FAQ that necessitates notice and comment. Pl. Mot. for J. at 17, 32-33. However, the CEE Memo is an internal guidance email that does not create any requirements of general or particular applicability. 5 U.S.C. § 551(4). The CEE Memo also does not mark the consummation of a decision-making process, and does not determine any rights or obligations. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). The CEE Memo simply provided guidance to CBP staff on how to properly apply the provisions of Presidential Proclamation No. 10947, without expanding the provisions established by the Proclamation. The language of the guidance itself suggests that it is tentative and subject to change by alerting customs officials to "continue to monitor the CSMS messages." As the District of Columbia Circuit explained, "[a]n agency action that merely explains how the agency will enforce a statute or regulation—in other words, how it will exercise its broad enforcement discretion or permitting discretion under some extant statute or rule—is a general statement of policy." *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014). Like in *Nat'l Min. Ass'n*, the guidance "does not tell regulated parties what they must do or may not do in order to avoid liability. . . [and it] imposes no obligations or prohibitions on regulated entities." *Id.* at 252.

Express Fasteners' related argument, that the CEE Memo required notice and comment pursuant to 19 U.S.C. § 1625(c)(1) because it modified CSMS Message No. 65236374 and the FAQs, is similarly unavailing. Pl.'s Mot. for J. at 32-33. Section 1625(c) only applies to modifications or revocations of prior *interpretive rulings*. That provision is inapplicable because the CEE Memo did not modify CSMS Message No. 65236374 or the FAQ. Furthermore, CSMS Message No. 65236374 and the FAQ did not constitute interpretive rulings, insofar as they

explained generally applicable provisions rather than "appl[ied] the provision of the Customs and related laws to a[ny] specific set of facts." 19 C.F.R. § 177.1(d)(1); *see also U.S. v. Rockwell Automation, Inc*, 462 F. Supp. 2d 1243, 1559-60 (Ct. Int'l Trade 2006) (explaining that the specificity requirement of 19 C.F.R. § 177.1(d)(1) is meant to distinguish rulings from generally applicable guidelines).

Finally, the CF-29s issued to Express Fasteners in this case, represent no rule of any kind, because they merely communicate CBP's action on the specific entries imported by Express Fasteners. Because the CF-29s lack any prospective or binding effect on the public beyond Express Fasteners, the CF-29s are simply not rules and are not subject to the APA's rulemaking process. *See Int'l Custom Products, Inc. v. United States*, 549 F. Supp. 2d 1384, 1395 (Ct. Int'l Trade 2008) (distinguishing rules under the APA as having a generally applicable prospective effect from adjudications involving the retroactive application of specific facts to only the affected party).

For the reasons discussed, Express Fasteners cannot seek review of its APA claims in this section 1581(a) action, and in any event Express Fasteners' claims are unfounded.

## IV. Express Fasteners' Paperwork Reduction Act Claim Fails

Count IV of Express Fasteners' complaint alleges a violation of the Paperwork Reduction Act (PRA). Compl. ¶¶ 55-60; *see also*, Pl.'s Mot. for J. at 34-39. Such claims are inapplicable to the facts of this case.

Express Fasteners argues that the alleged CEE Memo and November 6, 2025 CF-29s (Notice of Proposed Action) violated the PRA, 44 U.S.C. § 3512(a)(1), which states that "no person shall be *subject to any penalty* for failing to comply with a *collection of information* that is subject to this subchapter if … the *collection of information* does not display a valid control number assigned by the Director in accordance with this subchapter" (emphasis added).

Specifically, Express Fasteners asserts that CBP's collection of information from it lacked the required Office of Management and Budget (OMB) control number and that CBP's assessment of Section 232 duties pursuant to the Presidential Proclamations are a "'penalty' imposed by CBP on Express Fasteners." Pl.'s Mot. for J. at 34.

The PRA, however, is entirely inapplicable to the facts and circumstances of this case for four reasons: (1) CBP acted pursuant to its statutory authority to collect information required to accurately assess import duties; (2) the PRA is not an affirmative defense to requirements imposed by statute; (3) the PRA cannot be used to circumvent legally-valid administrative proceedings involving individuals or entities; and (4) the PRA does not provide a private right of action. Additionally, even if the Court were to recognize Express Fasteners' PRA claims as applicable, which it should not, there has been no violation of the PRA because CBP's assessment of Section 232 duties on plaintiff's entries is not a "penalty" and CBP did not engage in a "collection" as recognized by the PRA.

First, CBP is statutorily mandated to appraise and classify merchandise, which requires obtaining information from importers about their entries. *See* 19 U.S.C. §§ 1484, 1500, 1502 (together requiring CBP to obtain information to properly appraise and classify imported merchandise). With passage of the Customs Modernization Act, Congress reinforced importers' responsibility and imposed a duty of reasonable care to timely and accurately provide classification, appraisement, and other data. 19 U.S.C. § 1484. Courts have long recognized that the PRA is inapplicable where the information requested by the agency at issue is required by statute. *See United States v. Ionia Mgmt. S.A.,* 498 F. Supp. 2d 477 (D. Conn. 2007) (holding the PRA did not apply to a reporting requirement statutorily imposed by Congress), *Gossner Foods, Inc. v. Env't Prot. Agency*, 918 F. Supp. 359 (D. Utah 1996) (holding that the "PRA is

inapplicable to information explicitly required by statute"); 5 C.F.R. § 1320.6(e). To the Government's knowledge, never before has an importer alleged a violation of the PRA when asked to submit information necessary to assess or confirm information needed to calculate duties on its products. Here, CBP's collection of information from Express Fasteners is authorized by statute and was necessary to correctly assess duties at liquidation.

Second, courts have held that the PRA cannot be used to avoid legal obligations imposed by statute. *See United States v. Patridge*, 507 F.3d 1092, 1094 (7th Cir. 2007) ("[t]he Paperwork Reduction Act does not change any substantive obligation"), *Willis v. Comm'r*, 351 F. App'x 970 (5th Cir. 2009) (holding that the PRA does not apply to a statutory requirement). In the context of CBP administrative proceedings, Express Fasteners cannot rely on the PRA to shield it from reporting information to the agency or remitting duties. By statute, importers are required to adhere to certain recordkeeping requirements and to produce entry-related records to CBP upon request. 19 U.S.C. § 1509, 19 C.F.R. § 163. Additionally, importers are subject to the standard of reasonable care when entering merchandise into the United States, including by providing accurate and complete information, which CBP ultimately relies on in assessing duties. 19 U.S.C. § 1484. The PRA does not provide an affirmative defense to these statutory obligations.

Third, and relatedly, the PRA cannot be used to circumvent appropriate administrative actions by government agencies. The PRA itself provides that it "shall not apply to the collection of information ... during the conduct of ... an *administrative action or investigation* involving an agency *against specific individuals or entities*." 44 U.S.C. § 3518(c)(1)(B)(ii) (emphasis added). The courts have routinely applied this exemption to administrative actions used to determine tax liability. *See Cf. Cameron v. I.R.S.*, 593 F. Supp. 1540, 1556 (N.D. Ind. 1984), *aff'd,*773 F.2d 126 (7th Cir. 1985) (stating that "[t]he process of assessment and collection

of taxes quite appropriately falls under [44 U.S.C. § 3518(c)(1)(B)(ii)]”), *Lonsdale v. U.S.*, 919 F.2d 1440, 1444–45 (10th Cir. 1990) (holding that the PRA “is inapplicable to ‘information collection request’ forms issued during an investigation against an individual to determine his or her tax liability”), *United States v. Saunders*, 951 F.2d 1065, 1066–67 (9th Cir. 1991) (finding that the 44 U.S.C. § 3512 does not apply to forms issued during an investigation into a taxpayer's tax liability).

Here, the CEE Memo and CF-29s (Notice of Action) were issued as part of an administrative action by CBP directed toward Express Fasteners, the aim of which was to determine the correct appraisement of its merchandise for purposes of assessing Section 232 duties. Accordingly, by its very terms, the PRA is inapplicable.

Fourth, Express Fasteners’ PRA claim should be dismissed because the PRA’s public protection provision does not authorize a private right of action that can be asserted against the United States, but may only be asserted as a defense. *See Teledyne, Inc. v. United States*, 50 Fed. Cl. 155, 190 (2001), *aff’d sub nom. Allegheny Teledyne Inc. v. United States*, 316 F.3d 1366 (Fed. Cir. 2003); *see also Nesarikar v. United States Patent and Trademark Office*, No 2026-1167, 2026 WL 1298101, at * 6 (Fed. Cir. May 12, 2026) (citing *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 844 (9th Cir. 1999) (“There are good reasons to doubt that a private right of action exists under [the PRA.]”); *Whitfield v. United States Sec. of State*, 853 Fed. App’x 327, 331 (10th Cir. 2021) (holding that the PRA is only available as a defense). Because Express Fasteners asserts the PRA as the basis for an affirmative cause of action, Count IV should be dismissed.

Finally, to the extent the Court might recognize Express Fasteners’ PRA claims as applicable to the facts and circumstances here, which it should not, Express Fasteners’ PRA

claims fail nonetheless because: (1) the duties assessed at liquidation are not a "penalty" and there is thus no harm that Express Fasteners suffered as a result of any hypothetical PRA violation and (2) the CEE Memo and the CSMS message did not constitute a collection. Pl.'s Mot. for J. at 34.

The PRA defines a "penalty" as "the imposition by an agency or court of a fine or other punishment; a judgment for monetary damages or equitable relief; or the revocation, suspension, reduction, or denial of a license, privilege, right, grant, or benefit …" 44 U.S.C. § 3502(14). CBP has not penalized Express Fasteners for failure to provide information; rather, as discussed above, the agency relied on the information provided by Express Fasteners to accurately assess Section 232 duties on the legally correct value of its steel merchandise. Courts have routinely interpreted "penalty" for PRA purposes to exclude monies legally owed independent of the request for information at issue. *See Cf. Springer v. C.I.R.*, 580 F.3d 1142 (10th Cir. 2009) (finding interest for unpaid income taxes under the Internal Revenue Code was not a "penalty" under the PRA), *Ramzan v. United States Dep't of Educ.*, 2018 WL 3727339 (E.D.N.Y. July 31, 2018) (finding contractual obligation to pay debts not a "penalty" under the PRA), *AAA Bonding Agency, Inc. v. United States Dep't of Homeland Sec.,* 2018 WL 11450370 (S.D. Tex. Mar. 26, 2018) (finding liability imposed by a breach of bond condition not to be a "penalty" under the PRA). Moreover, the PRA only provides a defense for the imposition of penalties resulting from the failure to provide information collected in contravention to the PRA—it does not provide a defense to duties, fees, taxes, exactments, or any other payment imposed by the Federal Government for other reasons, regardless of whether they were calculated based on information supplied to the Government. 5 U.S.C. § 3512(a) (providing that no person should be penalized *for failing to comply* with a collection of information").

Neither the CEE Memo nor the CSMS message constitute a collection of information. Express Fasteners does not dispute that it, along with every other importer, is required to file a declaration in the form prescribed by the Secretary and maintain records to be inspected by CBP. 19 U.S.C. §§ 1485(a), 1508-1509; 19 C.F.R. § 163. The CEE Memo and CSMS message did not request additional information in excess of what any other importer was required to submit but, rather, provided instructions on which headings to use and how to properly calculate the value of the products. *See Gassei v. Dep't of Justice*, 968 F.2d 19 (10th Cir. 1992) (finding that instructions to fill out extant forms "function only to aid the taxpayer in providing the information [already] required by the 1040 form").

Therefore, the PRA does not apply and Count IV of Express Fasteners' complaint should be dismissed in its entirety.

## CONCLUSION

For the reasons explained above, judgment should be granted in this matter to the United States and the complaint should be dismissed with prejudice.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy Eddon
GUY EDDON
Senior Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Sohom Datta
Senior Attorney
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: September 16, 2026

**CERTIFICATE OF COMPLIANCE**

I, Guy Eddon, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's memorandum in support of defendant's cross motion for judgment, dated September 16, 2026, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 8,236 words.

/s/ Guy Eddon